UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------X

In re:

FEREYDOON ABIR and FLORA ABIR,

                          Debtors.

------------------------------------------------------------X

FEREYDOON ABIR and FLORA ABIR,

                          Appellants,

                          **ORDER**
-against-                          09 CV 2871(SJF)

MALKY, INC.

                          Appellee.

NEIMAN & MAIRANZ P.C.,

                          Intervenor.

------------------------------------------------------------X

FEUERSTEIN, J.,

On July 7, 2009, appellants Fereydoon Abir and Flora Abir (collectively, "appellants") filed a notice of appeal from an order of the United States Bankruptcy Court for the Eastern District of New York (Eisenberg, U.S.B.J.), entered May 11, 2009, which denied, following a hearing, appellants' application for an order partially disallowing the claim filed by appellee Malky, Inc. ("Malky") in appellants' involuntary Chapter 7 proceeding. For the reasons set forth below, the order of the bankruptcy court is affirmed.

I.      BACKGROUND

     A.     Factual Background[1]

---

[1] The following facts are not in dispute, unless otherwise indicated.

1

At all relevant times, appellants owned real property located at 104 Wildwood Road, Kings Point, New York, which was encumbered by a mortgage held by the Bank of America, N.A. ("the Bank"), secured by a note given by appellants to the Bank in the amount of one million two hundred forty thousand dollars ($1,240,000.00).

In 1995, appellants stopped repaying their mortgage loan. On or about October 27, 1995, a foreclosure action was commenced in the Supreme Court of the State of New York, County of Nassau, under index number 95-31786 ("the foreclosure action"). The referee appointed by the court in the foreclosure action determined that as of March 31, 1999, the amount due on the mortgage loan was one million six hundred ninety-three thousand nine hundred seventy-seven dollars and forty-two cents ($1,693,977.42).

On or about August 10, 2000, the Bank obtained a judgment of foreclosure and sale against appellants, which included a deficiency judgment in the approximate sum of two million one hundred thousand dollars ($2,100,000.00). Pre-judgment interest to the date of that judgment accrued in the amount of one hundred thirty-five thousand three hundred thirty-five dollars and twenty-five cents ($135,335.25).

Subsequently, appellants negotiated a settlement with the Bank pursuant to which the Bank agreed, *inter alia*, to accept the sum of one million three hundred thousand dollars ($1,300,000.00) from appellants, or their designee, in full satisfaction of the note, mortgage and judgment of foreclosure and sale. However, appellants were ultimately unsuccessful in securing the bridge loan they needed in order to fulfill the settlement agreement. As a result, the Bank scheduled a foreclosure sale of appellants' home for December 20, 2001. Malky eventually agreed to provide appellants with the necessary funds for the bridge loan.

On December 18, 2001, Malky entered into an agreement with appellants ("the Malky Agreement") pursuant to which, *inter alia*, Malky would loan appellants the principal amount of one million three hundred twenty-five thousand dollars ($1,325,000.00) and appellants would repay their debt to Malky within eight (8) to ten (10) months at an annual interest rate, including assorted charges, that ranged from 25.6% to 28.5% (hereinafter, "the usurious loan"). The Agreement further provided that if appellants did not repay their debt at the end of the ten (10) month period, Malky would have the right to enforce the judgment of foreclosure and sale and to take possession of appellants' house.

The following day, December 19, 2001, Malky entered into an agreement with the Bank ("the Bank Agreement"), pursuant to which it purchased the judgment of foreclosure and sale from the Bank, worth over two million one hundred thousand dollars ($2,100,000.00), for the amount of one million three hundred thousand dollars ($1,300,000.00). Thus, Malky funded its loan to appellants by making their payment directly to the Bank, as a result of which the foreclosure sale was cancelled.

On January 9, 2002, Malky obtained the right, *inter alia*, to enforce the judgment of foreclosure and sale.

Appellants failed to repay Malky in accordance with the Malky Agreement. After Malky informed appellants that it intended to enforce the judgment of foreclosure and sale, appellants commenced an action in the Supreme Court of the State of New York for the County of Nassau ("the state court") against Malky, and others, entitled <u>Abir v. Malky, Inc., et al.</u>, no. 6938/03 ("the state court action"), to recover damages, *inter alia*, for fraud and breach of fiduciary duty. Malky moved in the state court for summary judgment to enforce the judgment of foreclosure and sale

3

against appellants and appellants cross-moved, *inter alia*, to have the Malky Agreement declared void on the grounds of usury and to deny Malky the right to enforce the judgment of foreclosure and sale since it was given as security for the usurious loan.

By order dated April 18, 2007, and entered May 10, 2007, the state court determined, *inter alia*: (1) that both the Malky Agreement and the Bank Agreement, which it viewed as a single transaction, were void and unenforceable as a usurious loan; and (2) that the judgment of foreclosure and sale was not usurious, but could be enforced only to the extent that Malky could recover the difference between the balance due on appellants' bank loan as of December 18, 2001, and the amount Malky paid to the Bank under the Bank Agreement, plus statutory interest and costs. Abir v. Malky, Inc., no. 6938/03 (N.Y. Sup. Ct. May 10, 2007) (Winslow, J.) ("the May 10, 2007 order").

By order entered August 15, 2007, the state court granted the parties' respective motions to reargue the May 10, 2007 order and, upon reargument, modified the May 10, 2007 order by determining, *inter alia*, that Malky could execute and recover on the judgment of foreclosure and sale because "the original mortgage was not usurious and * * * [appellants] were not parties to the [Bank Agreement]." Abir v. Malky, Inc., no. 6938/03, at p. 2 (N.Y. Sup. Ct. Aug. 18, 2007) (Winslow, J.) ("the August 15, 2007 order"). The state court awarded Malky interest at the rate of three and a half percent (3.5%) per annum on the principal amount of the deficiency provision of the judgment of foreclosure and sale, accruing from the date of the Malky Agreement, December 18, 2001. Id.

On September 12, 2007, final judgment, determining that Malky " may recover under the Judgment of Foreclosure and Sale * * * with interest accruing from December 18, 2001, the date

4

of the [Malky Agreement], and no earlier," at an interest rate of three and a half percent (3.5%), was entered in the state court action. Abir v. Malky, Inc., et al., no. 6938/03 (N.Y. Sup. Ct. Sept. 12, 2007) ("the final judgment").

By order dated February 24, 2009, the Supreme Court of the State of New York, Appellate Division, Second Judicial Department ("the Appellate Division"), on appeal, modified the final judgment by: (1) substituting a nine percent (9%) interest rate at which Malky could recover under the judgment of foreclosure in lieu of the three and a half percent (3.5%) awarded by the state court; and (2) setting the date at which interest accrued at August 10, 2000, instead of December 18, 2001. Abir v. Malky, Inc., et al., 59 A.D.3d 646, 873 N.Y.S.2d 350 (2d Dept. 2009). As modified, the Appellate Division affirmed the judgment of the state court. (Id.) The Appellate Division found, *inter alia*, that the Malky Agreement was void and unenforceable as usurious, but that the judgment of foreclosure and sale was enforceable because it flowed solely from appellants' default on the non-usurious antecedent bank loan. The Appellate Division further found that the state court: (1) "improvidently exercised its discretion in departing from the statutory interest rate of 9% per annum, which is a rate that is presumed to be reasonable * * *;" and (2) erred in fixing the accrual date of interest as of the date of the Malky Agreement since "Malky, upon purchasing the judgment, stepped into the shoes of the Bank, [and, thus] the proper accrual date [was] August 10, 2000, the date of entry of the judgment of foreclosure and sale * * *." Id. (Citations omitted).

B.     Procedural Background

On or about February 4, 2008, Neiman & Mairanz, P.C. ("N&M"), appellants' attorneys

5

in the state court action[2], commenced an involuntary proceeding, pursuant to Chapter 7 of the Bankruptcy Code, against appellants in the United States Bankruptcy Court for the Eastern District of New York ("the bankruptcy proceeding"). In re Abir, no. 8-08-70566-dte. Richard L. Stern ("the trustee") was subsequently appointed as Chapter 7 trustee.

On or about March 16, 2009, Malky filed a proof of claim in the bankruptcy proceeding in the amount of three million two hundred forty-eight thousand one hundred forty-nine dollars and eighty-eight cents ($3,248,149.88) based upon "a mortgage loan.[3]"

On or about March 20, 2009, appellants filed a motion, in which N&M subsequently joined[4], objecting to the claim filed by Malky in the bankruptcy proceeding and seeking reduction of that claim to the amount of eight hundred ninety-six thousand three hundred eighty-nine dollars and eighty-eight cents ($896,389.88). Appellants argued, *inter alia*, that the Bank's foreclosure amount was two million fifty-four thousand one hundred sixty-eight dollars and sixty-two cents ($2,054,168.62)[5], but that the state court ruled that Malky could only recover the

---

[2] N&M obtained a judgment against appellants in the Supreme Court of the State of New York in the approximate amount of two hundred fifty thousand dollars ($250,000.00) for unpaid legal fees, which remains unpaid. N&M also claims an unsecured debt against appellants in the amount of one hundred fourteen thousand dollars ($114,000.00).

[3] N&M admitted in its joinder of the motion for partial disallowance of Malky's claim, that the amount due under the foreclosure judgment as of the date Malky filed its proof of claim, March 16, 2009, was three million two hundred forty-eight thousand one hundred forty-nine dollars and eighty-eight cents ($3,248,149.88). (Joinder of N&M in the Debtors' Motion to Partially Disallow Malky's Claim [N&M Mot.], ¶ 23).

[4] For the sake of convenience, I will not separately refer to N&M unless its arguments differ substantially from appellants.

[5] The loan amount as of March 31, 1999, plus pre-judgment interest and Malky's costs, set forth in its proof of claim as one thousand four hundred eight dollars ($1,408.00), plus nine percent interest until December 18, 2001, the date of the Malky Agreement, in the amount of two hundred twenty-three thousand four hundred forty-seven dollars and ninety-five cents

6

difference between that amount and the usurious loan, in the amount of one million three hundred twenty-five million ($1,325,000.00). Thus, according to appellants, Malky's claim as of December 18, 2001 was, at a maximum, only seven hundred twenty-nine thousand one hundred sixty-eight dollars and sixty-two cents ($729,168.62). According to N&M, the maximum amount of Malky's claim is one million two hundred twelve thousand four hundred seventy-one dollars and two cents ($1,212,471.02), accounting for nine percent (9%) interest from December 18, 2001 to April 28, 2009 (the date of N&M's objection), which yields an additional four hundred eighty-three thousand three hundred two dollars and forty cents ($483,302.40).

In response, Malky argued, *inter alia*, that appellants' objection to its claim ignored: (1) the August 15, 2007 order of the state court holding, upon reargument, that the judgment of foreclosure and sale remained enforceable notwithstanding the Malky Agreement, but that interest would accrue at a reduced rate; (2) the final judgment of the state court, which clearly states that Malky is entitled to recover on the judgment of foreclosure and sale; and (3) the order of the Appellate Division holding that the judgment of foreclosure and sale was enforceable notwithstanding that the Malky Agreement was not.

By order entered May 11, 2009, the bankruptcy court, following a hearing, denied appellants' motion to partially disallow and reduce Malky's claim. At the hearing, the bankruptcy judge found, *inter alia*, that the final judgment of the state court clearly determined that Malky may recover under the judgment of foreclosure and sale and that the Appellate Division merely modified the interest rate applicable to the judgment of foreclosure and sale, but otherwise affirmed the state court judgment. (Transcript of Hearing before Hon. Dorothy

---

($223,447.95).

Eisenberg, U.S.B.J. [T.], pp. 29-33).

On March 18, 2009, appellants filed a notice of appeal of the May 11, 2009 order of the bankruptcy court. Subsequently, N&M sought leave to intervene in the bankruptcy appeal and to join in the appeal. N&M's motion is granted, as unopposed, and its brief, submitted as an exhibit to its motion, has been considered on the appeal.

II. DISCUSSION

A. Standard of Review

On an appeal from a bankruptcy court decision, a district court must review findings of fact under a "clearly erroneous" standard, with "due regard * * * given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Fed. R. Bankr. P. 8013. Issues of law, on the other hand, are reviewed *de novo*. See In re Vouzianas, 259 F.3d 103, 107 (2d Cir. 2001). "[T]he district court * * * may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." Fed. R. Bankr. P. 8013.

B. Preclusive Effect of State Court Judgment

Appellants contend, *inter alia*, that the bankruptcy court erred in upholding Malky's claim "based cavalierly and solely upon the language in the [state court judgment] and [Appellate Division order], both to the effect that 'the non-usurious antecedent bank loan... was enforceable...'", (Appellants' Brief [App.], p. 7), without further considering appellants' "right [under New York law] to offset the amount of [the usurious] loan against that of the enforceable former loan. (Id.) Appellants further contend, *inter alia*, that the bankruptcy court erred in

failing to give preclusive effect to the state court's May 10, 2007 determination that they were entitled to offset the balance due under the judgment of foreclosure and sale against the amount of the usurious loan. According to appellants, that determination was never explicitly modified or reversed by any subsequent state court determination and, thus, was entitled to preclusive effect. Appellants further contend that pursuant to the state court's May 10, 2007 order, the judgment of foreclosure and sale was defined as "the difference representing the balance due on the Bank * * * loan on December 18, 2001 minus $1.325 million [the amount of the usurious loan]." (App. Brief, p. 9 (quoting the May 10, 2007 order, p. 9)). Thus, according to appellants, any future reference to the judgment of foreclosure and sale was reduced to that amount.

Malky correctly notes that appellants' argument is an impermissible attempt to collaterally attack the state court's final judgment, and August 15, 2007 order on which it was based, and the Appellate Division's order affirming, in pertinent part, that judgment. The state court initially determined that appellants were entitled to an offset based upon Malky's usurious loan, and, thus, that Malky was only "entitled to recover [on the judgment of foreclosure and sale]: (i) the difference representing the balance due on the Bank * * * loan on December 18, 2001 minus $1.325 million; plus (ii) statutory interest on that difference from December 18, 2001; plus (iii) actual costs incurred and paid by [Malky] in connection with the property." (May 10, 2007 Order, p. 9). However, upon reargument, the state court expressly modified its determination of what Malky was entitled to recover under the judgment of foreclosure and sale by holding that: "[i]n view of the fact that the original mortgage was not usurious and because [appellants] were not parties to the [Bank] Agreement [and subsequent assignments] * * *, [Malky] may recover under the Judgment of Foreclosure and Sale, Index No. 31786/95, dated

August 10, 2000, with interest accruing from December 18, 2001, the date of the [usurious loan], and no earlier." (August 17, 2007 Order, p. 2). The fact that the state court originally believed that a hearing was required to determine the calculations of the amount due under the May 10, 2007 order, which included the offset, but then entered final judgment in the state court action after its subsequent determination, on reargument, without a hearing, supports the determination that Malky is entitled to the entire amount due under the judgment of foreclosure and sale, which amount is easily calculated and does not require a hearing. This interpretation is consistent with the Appellate Division's finding that although the state court originally determined that the judgment of foreclosure and sale was "enforceable, but only to the extent that Malky could recover the difference between the balance due on [appellants'] bank loan as of December 18, 2001, and the amount Malky paid to the Bank pursuant to the [Malky Agreement], plus statutory interest and costs," upon reargument, the state court "modified its previous order by determining, inter alia, that Malky could execute and recover on the judgment of foreclosure and sale." Abir v. Malky, Inc., 59 A.D.3d at 648, 873 N.Y.S.2d 350. Appellants', and N&M's, contentions to the contrary are rejected.

28 U.S.C. § 1738 provides, in pertinent part, that state court judgments "shall have the same full faith and credit in every court within the United States * * * as they have by law or usage in the courts of such State * * * from which they are taken." See Allen v. McCurry, 449 U.S. 90, 96, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980) ("Congress has specifically required all federal courts to give preclusive effect to state-court judgment whenever the courts of the State from which the judgments emerged would do so * * *.") This mandate applies equally to bankruptcy courts. See Kelleran v. Andrijevic, 825 F.2d 692, 694 (2d Cir. 1987). "[A]

10

bankruptcy court may look behind a state court judgment only if that judgment was procured by fraud or collusion, or where the rendering court lacked jurisdiction." In re Slater, 200 B.R. 491, 495 (E.D.N.Y. 1996). "Bankruptcy proceedings may not be used to relitigate issues already resolved in a court of competent jurisdiction." Kelleran, 825 F.2d at 695.

Under New York law, collateral estoppel precludes a party from relitigating an issue when: "(1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding." Vargas v. City of New York, 377 F.3d 200, 205-206 (2d Cir. 2004).

By denying appellants' motion to partially disallow and reduce Malky's claim by the offset amount determined by the state court in its original May 10, 2007 order, and thereby allowing Malky's claim in the full amount of the judgment of foreclosure and sale, plus nine percent (9%) interest, the bankruptcy court properly gave full faith and credit to the final judgment of the state court, based upon the August 15, 2007 order, and the order of the Appellate Division, affirming, as modified, the final judgment. Since the issue of what Malky was entitled to recover under the judgment of foreclosure and sale was actually and necessarily decided by the state court and the parties clearly had a full and fair opportunity to litigate that issue in the state court, and since there is no allegation that the final judgment of the state court is a product of fraud or collusion, or that the state court lacked jurisdiction, the doctrine of collateral estoppel bars appellants from relitigating their offset claim, and the amount of Malky's claim, in the bankruptcy court.[6]

---

[6] Appellants' Rooker-Feldman argument is wholly without merit, since Malky's claim in the bankruptcy proceeding, and appellants' objection thereto, merely collaterally attack the final

11

C.  Weight of Judgment

Appellants also contend that the bankruptcy court erred in affording controlling weight to the state court judgment, rather than the state court decisions on which it was based.

Malky correctly notes, however, that by referring to the February 24, 2009 state court "judgment," the bankruptcy court was obviously basing the denial of appellants' objection to Malky's claim on the Appellate Division's order affirming, as modified, the final judgment of the state court. Moreover, in their brief on this appeal, appellants expressly note that the bankruptcy court's decision was based on both the state court judgment and the Appellate Division's order. (App. Brief., p. 7). Accordingly, this contention is wholly without merit.

D.  11 U.S.C. §§ 502(b)(1) and 558

Appellants contend that the bankruptcy court was required by Sections 502(b)(1) and 558 of the Bankruptcy Code to disallow the portion of Malky's claim which included the amount of the usurious loan.

Malky correctly contends that Sections 502(b)(1) and 558 are inapplicable to bar its claim.

Section 502(b) provides, in pertinent part, that, with exceptions not relevant here, if an objection to a claim is made:

---

judgment of the state court. Claims that only collaterally attack a state court judgment are not barred under the Rooker-Feldman doctrine. See Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280, 125 S.Ct. 1517, 1527, 161 L.Ed.2d 454 (2005). "If a federal plaintiff presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party * * *, then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion." Exxon, 544 U.S. 280, 125 S.Ct. at 1527. Accordingly, the bankruptcy court had subject-matter jurisdiction over Malky's claim, which is determined under state law principles of preclusion.

12

> "the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that--(1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured; * * *."

11 U.S.C. § 502(b)(1).

Section 558 provides, in pertinent part, as follows:

> "The estate shall have the benefit of any defense available to the debtor as against any entity other than the estate, including * * *, usury * * *. A waiver of any such defense by the debtor after the commencement of the case does not bind the estate."

11 U.S.C. § 558.

However, since the state court upheld the judgment of foreclosure and sale as valid and enforceable, and Malky's claim is based entirely upon the amount of the judgment of foreclosure and sale, plus interest as determined by the Appellate Division, Sections 502(b)(1) and 558 are inapplicable to disallow any portion of Malky's claim. Accordingly, appellants' contention is without merit.

### E. Abstention

N&M further contends that, at a minimum, the bankruptcy court should have abstained from any determination "and let the matter [of the ambiguities between the various state court orders and judgment] be decided by the State Court which made all the decisions and orders in the case as well as the judgment relied on * * *." (Intervenor's Brief [Int. Brief], p. 3). According to N&M, abstention is in the interest of comity with the state court, since the state court expressly directed a hearing to determine the amount due under the judgment of foreclosure

and sale, which has never been held.

"[F]ederal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress. * * * This duty is not, however, absolute." Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 716, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996) (citations omitted). Indeed, 28 U.S.C. § 1334(c)(1) authorizes permissive abstention in bankruptcy proceedings under certain circumstances. Permissive abstention under Section 1334(c)(1) is within the sound discretion of the bankruptcy court. See In re Petrie Retail, Inc., 304 F.3d 223, 232 (2d Cir. 2002).

Section 1334(c)(1) provides, in pertinent part:

> (c)(1) [with exception not relevant here], nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

The Second Circuit has held that Section 1334(c)(1) "was intended to codify judicial abstention doctrines * * * [and] summarizes and incorporates federal non-bankruptcy abstention doctrines." In re Pan American Corp., 950 F.2d 839, 845-846 (2d Cir. 1991) (internal quotations and citation omitted). Accordingly, in addition to the factors expressly set forth in Section 1334(c)(1), bankruptcy courts may also consider, *inter alia*, the following factors in determining whether to abstain from hearing a particular proceeding: "(1) the effect or lack thereof on the efficient administration of the [bankruptcy] estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable state law, (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted 'core' proceeding, (8) the

feasability of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden of [the court's] docket, (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of nondebtor parties." In re Luis Electrical Contracting Corp., 165 B.R. 358, 368 (Bankr. E.D.N.Y. 1992) (quoting In re Craft Architectural Metals Corp., 115 B.R. 423, 432 (E.D.N.Y. 1989)).

In Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), the Supreme Court held:

> "Abstention from the exercise of federal jurisdiction is the exception, not the rule. 'The doctrine of abstention, under which a [federal] Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a [federal] Court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest.'"

Colorado River, 424 U.S. at 813, 96 S.Ct. 1236 (citing Allegheny County v. Frank Mashuda Co., 360 U.S. 185, 188-189, 79 S.Ct. 1060, 3 L.Ed.2d 1163 [1959]).

The bankruptcy judge did not abuse her discretion in failing to abstain under Section 1334(c)(1), as there are no important countervailing interests warranting abstention in this case. It is undisputed that this is a "core" bankruptcy proceeding and that the right to a jury trial is not implicated here. (N&M Brief, p. 12). Moreover, there are no state law issues present. Rather, the only issue raised by appellants' objection to Malky's claim involves the construction of the plain meaning of the state court's final judgment, as modified and affirmed by the Appellate Division. In addition, there is no related proceeding presently pending in state court, as final

15

judgment was entered in the state court action on September 12, 2007, which was affirmed, in relevant part, on appeal. Indeed, although N&M notes that no hearing was ever held in the state court, final judgment was rendered in the state court action notwithstanding the lack of hearing. The issue of forum shopping is not implicated here, as the bankruptcy proceeding was not commenced by Malky. Moreover, it is clearly more efficient to the administration of the bankruptcy estate for Malky's claim to be adjudicated in the bankruptcy court. Contrary to N&M's contention, the language in the state court's final judgment, and the August 15, 2007 order upon which it was based, is not ambiguous and clearly holds that the judgment of foreclosure and sale is wholly enforceable by Malky. There is "no need for consideration of State practice and legal precedent," (N&M Brief, p. 12), to interpret that judgment. Indeed, the state court's final judgment has already been interpreted by the Appellate Division, which upheld the judgment of foreclosure and sale as wholly enforceable by Malky. Accordingly, the bankruptcy judge properly exercised her discretion in denying appellants' and N&M's objections to Malky's claim in the bankruptcy proceeding.

III.  CONCLUSION

For the foregoing reasons, the order of the bankruptcy court is affirmed.

**SO ORDERED.**

_____
SANDRA J. FEUERSTEIN
United States District Judge

Dated: March 22, 2010
Central Islip, New York